UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ALLEN D. LAYFIELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:20-CV-00034-SPM |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Kilolo Kijakazi, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Allen D. Layfield ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I. **FACTUAL BACKGROUND**[2]

On March 11, 2019, Plaintiff testified as follows at a hearing before the Administrative Law Judge (ALJ). (Tr. 33-57). Plaintiff's most recent work was as a welder from August 2013 until February 2014; that job ended because he was missing too many days due to his depression and post-traumatic stress disorder. (Tr. 43). Since then, he has not looked for work. (Tr. 43).

Plaintiff lives with his daughter and two granddaughters and spends most of his days watching television or napping. (Tr. 44). Two or three times a week during the summertime, he goes down the street to see friends from his late wife's family; he stays for two to eight hours, and they just sit and talk or watch television. (Tr. 45, 56). He goes to church on Sundays with his daughter about three times a month; when he misses, it is usually because he stayed up late the night before or because of his medication. (Tr. 46, 50).

Plaintiff has nightmares three to four times a week; they sometimes involve his deceased wife. (Tr. 50-52). He also sometimes has flashbacks to the day that his wife died; afterwards, he feels shaky. (Tr. 52). Plaintiff has good days and bad days; on bad days, he has no appetite, experiences lack of energy and loss of memory, and he stays in bed all day. (Tr. 53). Plaintiff also has crying spells lasting from 15 minutes to an hour and a half. (Tr. 53-54). He has panic attacks about twice a week; they last 15 minutes to half an hour, and afterwards he feels exhausted. (Tr. 54). Plaintiff gets very anxious when he is in a crowded place. (Tr. 55). Plaintiff has side effects from his medications, including drowsiness and lack of energy. (Tr. 57).

During the relevant time frame, Plaintiff saw his treating nurse practitioner at Mark Twain Behavioral Health, Geoff Westhoff, APN, approximately every one to two months. Mr. Westhoff

---

[2] Because Plaintiff's arguments relate to his mental impairments, the Court focuses primarily on the facts relevant to those impairments.

diagnosed Plaintiff with bipolar II disorder, panic disorder, and post-traumatic stress disorder. (Tr. 684-85). Plaintiff's medications included Cymbalta, Trintellix, alprazolam, Seroquel, and prazosin. (Tr. 680-81). Plaintiff met frequently (often several times a month) with Community Support Specialists at Mark Twain Behavioral Health to discuss what was going on in his life, his goals, and strategies for dealing with his problems and achieving his objectives. Plaintiff also sought treatment for various physical conditions. On March 11, 2019, Mr. Westhoff completed a Medical Source Statement in which he opined that Plaintiff had marked or extreme limitations in several areas of functioning and would frequently be absent from work or off-task. (Tr. 739-42).

With regard to the medical and vocational records, the Court generally accepts the facts as set forth in the parties' respective statements of fact and responses. In the discussion below, the Court will cite to specific portions of the record as necessary to address the parties' arguments.

## II.    PROCEDURAL BACKGROUND

On September 6, 2017, Plaintiff applied for SSI, alleging that he had been unable to work since August 30, 2017, due to worsening bipolar disorder, worsening post-traumatic stress disorder (PTSD), worsening chronic obstructive pulmonary disease (COPD), worsening chronic back pain, scoliosis, worsening depression, and hepatitis C. (Tr. 192-96, 220). His application was initially denied. (Tr. 108-113). On January 10, 2018, Plaintiff filed a Request for Hearing by Administrative Law Judge. (Tr. 116-18). On March 11, 2019, the ALJ held a hearing on Plaintiff's claim. (Tr. 33-66). On May 31, 2019, the ALJ issued an unfavorable decision. (Tr. 14-31). On August 11, 2019, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 188-89). On March 11, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

### III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 416.920(a)(ii); *McCoy*, 648 F.3d at

4

611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 416.920(a)(4), which is "the most [a claimant] can do despite [his or her] limitations," 20 C.F.R. § 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of

5

other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.960(c)(2).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since August 30, 2017, the application date; that Plaintiff had the severe impairments of depression, anxiety, PTSD, COPD, cirrhosis of the liver secondary to hepatitis C, and chronic back pain; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 19-20). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he should never be required to climb a ladder, rope or scaffold. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He must avoid concentrated exposure to workplace hazards, such as unprotected heights and operational control of moving machinery. He is limited to simple, routine, repetitive tasks in a low stress job defined as requiring only occasional decisionmaking and only occasional changes in the work setting and no production rate work. Job responsibilities should not require public interaction, only occasional contact with coworkers but with no tandem tasks and occasional supervision.

(Tr. 22). At Step Four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 26). However, at Step Five, relying on the testimony of a vocational expert, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 26). The ALJ identified three representative occupations: laboratory equipment cleaner, stubber, and stacker. (Tr. 27). Thus, the ALJ found that Plaintiff has not been under a disability, as defined in the Act, since August 30, 2017, the date the application was filed. (Tr. 27).

6

V.   DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ did not properly analyze the opinion of treating psychiatric nurse practitioner Geoff Westhoff; and (2) that the RFC assessment made by the ALJ is not supported by the weight of the evidence.

A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. § 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894

7

(8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ's Assessment of Mr. Westhoff's Opinion

Plaintiff's first argument is that the ALJ did not analyze the opinion of treating nurse practitioner Geoff Westhoff correctly under the relevant regulations. Mr. Westhoff treated Plaintiff regularly for his mental impairments for several years prior to offering his opinion. (Tr. 308-55, 648-24). In March 2019, Mr. Westhoff opined that Plaintiff had extreme limitations in the ability to make judgments on complex work-related decisions; marked limitations in the ability to make judgments on simple work-related decisions; marked limitations in the ability to understand, remember, and carry out complex instructions; and moderate limitations in the ability to understand, remember, and carry out simple instructions. (Tr. 739-40). He explained that these limitations are based on Plaintiff's very poor short-term memory, impaired judgment, difficulty with focus and concentration, problems with time management, lack of ability to deal with others, limited energy and stamina, tendency to become easily flustered and disrupted, and symptoms of depression and anxiety brought on in high-stress situations. Mr. Westhoff also wrote that although medication had provided some small benefit for Plaintiff's mood, it had not resolved his other symptoms, and "patient is within the 33% of individuals who are treatment resistant." (Tr. 740).

Mr. Westhoff also opined that Plaintiff has extreme limitations in the ability to interact appropriately with supervisors, marked limitations in the ability to interact with the public and coworkers, and extreme limitations in the ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 740). He explained that these limitations are based

8

on Plaintiff's tendency to become easily frustrated; increased anxiety and panic attacks around unfamiliar people and surroundings; tendency to withdraw when given any criticism; tendency to become nervous and overwhelmed when dealing with the public; difficulty controlling his emotions in high stress situations; tendency at times to walk away from people, responsibilities, and duties; and belief at times that coworkers and supervisors are conspiring against him. (Tr. 740).

Mr. Westhoff also wrote that Plaintiff's mental instability makes it difficult for him to maintain relationship with others; that Plaintiff lacks the motivation at times to leave the home; that Plaintiff is often unable to take care of his house or maintain his basic daily hygiene; that Plaintiff experiences frequent crying episodes and isolates himself from his family; and that when Plaintiff is depressed, he fails to fulfill his financial obligations, as he lacks the motivation to even care about paying the bills. Mr. Westhoff stated that Plaintiff's impairments are likely to produce good days and bad days; that Plaintiff would likely be absent from work more than four days per month; that Plaintiff was likely to be off task 25% or more of the time; and that Plaintiff's symptoms of panic attacks and anxiety would require him to take unscheduled breaks at least every two hours during the work day. (Tr. 741).

Because Plaintiff's claim was filed in January 2018, the ALJ was required to evaluate Mr. Westhoff's opinion pursuant to the new rules set forth at 20 C.F.R. § 416.920c. Under these rules, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [a claimant's] medical sources." § 416.920c(a). The ALJ must evaluate the persuasiveness of medical opinions in light of the following factors: (1) supportability (the degree to which the medical source presents objective medical evidence and supporting explanations to support his or her opinions); (2)

9

consistency (how consistent the opinion is with evidence from other medical and nonmedical sources); (3) relationship with the claimant (including the length, purpose, nature, and extent of the relationship, and the frequency of examinations); (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies." § 416.920c(a)-(c). The first two factors—supportability and consistency—"are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions, and the ALJ must explain how he or she considered the factors of supportability and consistency in the decision. § 416.920c(b)(2). The ALJ may, but is "not required to," explain how he or she considered the remaining factors. *Id.*

After review, the Court finds that the ALJ's evaluation of Mr. Westhoff's opinion is consistent with the above regulations and is supported by substantial evidence. At the outset, the Court notes that although the ALJ indicated that he found Mr. Westhoff's assessment "not persuasive," it does not appear that he disregarded that assessment entirely. The RFC includes very significant limitations on Plaintiff's mental abilities, including limitations in several of the areas addressed by Mr. Westhoff. The ALJ imposed significant limitations on Plaintiff's ability to work with other people, limiting him to jobs that do not require public interaction, require only occasional contact with coworkers and supervisors, and do not require tandem tasks. These limitations suggest that the ALJ was partially crediting Mr. Westhoff's opinions regarding Plaintiff's difficulty dealing with unfamiliar people, tendency to become nervous and overwhelmed dealing with the public, difficulty taking criticism, and difficulty interacting with coworkers and supervisors. The ALJ also limited Plaintiff to simple, routine, repetitive tasks, which partially accounts for Mr. Westhoff's opinions regarding Plaintiff's inability to understand, remember, and carry out complex instructions. He further limited Plaintiff to low-stress jobs that

require only occasional decisionmaking and only occasional changes in the work setting, and no production rate work. These limitations partially account for Mr. Westhoff's opinions regarding Plaintiff's anxiety and difficulty controlling his emotions in high-stress situations, as well as his limited ability to make judgments on simple work-related decisions.

To the extent that the ALJ did not incorporate Mr. Westhoff's more extreme limitations in the RFC, the ALJ's explanations for doing so were consistent with the relevant regulations and supported by the record. As indicated above, under the new rules, the ALJ is required to articulate his consideration of the supportability and consistency factors. The ALJ did so here. First, he found that Mr. Westhoff's assessment was not supported by his own treatment notes. (Tr. 25). That reasoning is consistent with the record. A review of Mr. Westhoff treatment notes shows little to no indication of most of the specific problems that Mr. Westhoff said formed the basis for his opinions such as a very poor short-term memory, problems with focus and concentration, lack of energy and stamina, inability to tolerate other people, lack of medication effectiveness, tendency to become easily frustrated, panic attacks, difficulty controlling his emotions in high stress situations, beliefs that coworkers and supervisors are conspiring against him, inability to maintain basic hygiene, and frequent crying episodes. At his visits to Mr. Westhoff, Plaintiff reported at various times feeling "depressed" or "depressed really bad" (Tr. 648, 669); not doing very well since he stopped taking his medication two weeks earlier (Tr. 655); not getting along with his daughter (Tr. 662); doing "alright" but having "some anxiety" (Tr. 676); doing "okay" and "pretty good" (Tr. 683); that his "anxiety has been real high because of [his] living situation" (Tr. 690); feeling "okay I guess" (Tr. 697); "doing okay" (Tr. 704); "doing pretty good" (Tr. 711); "doing okay" and having a stable mood (Tr. 718). He did not report the extreme problems described in Mr. Westhoff's opinion. Additionally, Mr. Westhoff's notes typically show that although Plaintiff

consistently had abnormal insight and judgment, his mental status examinations almost always showed normal appearance, behavior, activity level, orientation, speech, affect, and thought process. (Tr. 648-49, 655-56, 662-63, 669-70, 676-77, 683-84, 690-91, 697-98, 704-05, 711-12, 718-19). Moreover, although Mr. Westhoff described Plaintiff as being resistant to treatment with medication, Plaintiff himself usually reported to Mr. Westhoff that he was doing well on his current medication regimen (Tr. 662, 676, 683, 690, 697, 704, 711, 718), Mr. Westhoff consistently noted that Plaintiff had a "fair response" to medication, and Mr. Westhoff usually simply continued Plaintiff's medications instead of trying different types or dosages (Tr. 660, 667, 681, 688, 690, 702, 709, 716, 724).

It was reasonable for the ALJ to discount limitations in the opinion that were never mentioned in the treatment records and were not supported by objective or other evidence in the treatment records. *See, e.g., Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016) ("[A]n ALJ may discount a treating source opinion that is unsupported by treatment notes."); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (affirming the ALJ's decision to discount the opinion of a treating physician where it contained limitations that "stand alone," "were never mentioned in [the physician's] numerous records of treatment," and were not "supported by any objective testing or reasoning which would indicate why the claimant's functioning need be so restricted").

Second, the ALJ reasonably found Mr. Westhoff's opinions inconsistent with other evidence in the record, including the observations of other treatment providers and facts in the record regarding Plaintiff's ability to interact with others. (Tr. 25). This reasoning is also supported by the record. Aside from a few instances in which one of Plaintiff's community support specialists noted an anxious mood (Tr. 417, 426, 504, 508, 512, 516, 616) or soft speech (Tr. 417), the community support specialists' observations of Plaintiff were consistently unremarkable,

12

indicating that Plaintiff actively participated in their sessions; that his mood was normal; that his appearance was "casual" (not "disheveled," "inappropriate," or showing "poor hygiene"); that his behavior was normal/appropriate; and that his speech was clear. (Tr. 417, 421, 426, 430, 434, 439, 443, 447, 451, 455, 460, 464, 469, 473, 477, 481, 485, 489, 493, 496, 500, 504, 508, 512, 516, 520, 524, 528, 532, 536, 540, 544, 548, 552, 556, 560, 564, 568, 572, 576, 580, 584, 588, 592, 596, 600, 604, 608, 612, 616, 620, 624, 628, 632, 636, 640, 644). In their narrative notes, the community support specialists mentioned various problems in Plaintiff's life, including health and eating issues, alcohol issues, housing issues, financial issues, ups and downs in his relationship with his daughter, and sometimes reported being stressed; however, their notes rarely or never mentioned the panic attacks, crying spells, problems maintaining hygiene, difficulty getting along with unfamiliar people, or other symptoms that Mr. Westhoff described in his opinion. When Plaintiff sought treatment for his physical problems, the notes regarding his mental state were also mostly unremarkable, with Plaintiff sometimes reporting anxiety, depression, and forgetfulness, but denying inability to concentrate (Tr. 367, 393, 403) and his providers noting he was cooperative (Tr. 368, 394, 404). As the ALJ noted, the records also indicate that Plaintiff maintains some relationships with others, including his daughter, his wife's family members (whom he visited with for several hours at a time in the summer, multiple times a week), and a longtime friend. (Tr. 25, 45, 56, 227-34). This evidence undermines, to some degree, Mr. Westhoff's opinions regarding Plaintiff's extreme limitations in the ability to interact with others.

Plaintiff's arguments for why the ALJ's evaluation was inadequate are not persuasive. Plaintiff argues that the ALJ incorrectly stated that it was unclear whether Mr. Westhoff had been educated or trained in the mental health field, citing Missouri regulations and Mr. Westhoff's licensing records with the Missouri Board of Healing Arts. Plaintiff may be correct that Mr.

13

Westhoff did have such training; however, Plaintiff does not point to any evidence of Mr. Westhoff's training in the record before the ALJ. The Court does not find the ALJ's statement unreasonable in light of the record before him. Plaintiff also argues that the ALJ should have explained how he considered the frequency with which Mr. Westhoff saw Plaintiff and the nature and extent of their treating relationship. But although the regulations require the ALJ to consider those factors, they plainly do not require the ALJ to articulate the consideration of those factors in the decision. *See* 20 C.F.R. § 416.920c(b)(2). Plaintiff has not challenged the validity of these regulations, and both the ALJ and the Court must follow them.

Plaintiff further argues that as a lay person without medical training, the ALJ "cannot just reject opinion evidence out of hand" and is "not capable of forming diagnoses or assessing the limitations they impose." Pl.'s Br., at 11. This argument is unpersuasive. The regulations specifically state that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" and instruct the ALJ in the factors to be considered in assessing the persuasiveness of those opinions. § 416.920c(a). Moreover, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Winn v. Comm'r, Soc. Sec. Admin*, 894 F.3d 982, 987 (8th Cir. 2018) (quoting *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007)). It is the ALJ's duty to consider and evaluate the opinion evidence, along with the rest of the evidence, and formulate the RFC; that is what the ALJ did here.

Plaintiff also argues that the ALJ improperly "cherry picked" statements from the Third Party Function Report of Plaintiff's longtime friend and from Plaintiff's own Function Report, while ignoring statements inconsistent with the RFC finding. The Court agrees that the ALJ did selectively quote from these reports. However, on the facts of this case, and in light of the other

14

evidence undermining Mr. Westhoff's opinion, the Court finds no reversible error. The Court notes that "an ALJ is not required to discuss every piece of evidence submitted" and that "an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (internal citations and quotation marks omitted).

The Court acknowledges that the ALJ could have found Mr. Westhoff's more persuasive than he did. However, the ALJ's decision makes clear that he considered all of the relevant evidence in assessing Mr. Westhoff's opinion and articulated that consideration as required by the relevant regulations. It is not the role of this Court to reweigh the evidence. The ALJ's assessment of this opinion was supported by substantial evidence, and the Court cannot say that this decision was outside the "available zone of choice." *See Hacker v. Barnhart*, 459 F.3d 934, 937-38 (8th Cir. 2006).

### C. The RFC Assessment

Plaintiff's second argument is that the RFC assessment is not supported by the weight of the evidence. Because the Court's role is only to determine whether the assessment is supported by substantial evidence, the Court will treat this as an argument that the RFC was not supported by substantial evidence.

A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

After careful review of the record, the Court finds that the ALJ's RFC assessment— that Plaintiff retains the capacity to perform simple, routine, repetitive tasks in a low stress job (one that requires only occasional decisionmaking and only occasional changes in the work setting and no production rate work), and that does not require public interaction, requires only occasional contact with coworkers but with no tandem tasks, and requires only occasional supervision—is supported by substantial evidence. First, this assessment is supported by the largely normal mental status examinations performed by Plaintiff's treating nurse practitioner and other providers throughout the relevant period, as well as by the observations of Plaintiff's community support specialists. As discussed above, although Plaintiff consistently had abnormal insight and judgment, his mental status examinations almost always showed normal appearance, behavior, activity level, orientation, speech, affect, and thought process. (Tr. 24-25, 648-49, 655-56, 662-63, 669-70, 676-77, 683-84, 690-91, 697-98, 704-05, 711-12, 718-19). Similarly, the community support specialists nearly always indicated that Plaintiff actively participated in their sessions; that his mood was normal, that his appearance was "casual" (not disheveled or showing poor hygiene); that his behavior was normal/appropriate; and that his speech was clear. (Tr. 417, 421, 426, 430, 434, 439, 443, 447, 451, 455, 460, 464, 469, 473, 477, 481, 485, 489, 493, 496, 500, 504, 508, 512, 516, 520, 524, 528, 532, 536, 540, 544, 548, 552, 556, 560, 564, 568, 572, 576, 580, 584, 588, 592, 596, 600, 604, 608, 612, 616, 620, 624, 628, 632, 636, 640, 644). It was appropriate for the ALJ to consider these objective findings in the RFC and, in light of these findings, it was appropriate for him not to include mental limitations in the RFC greater than the ones he did. *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 931-33 (8th Cir. 2010) (finding that the ALJ reasonably discounted allegations of disability based in part on unremarkable examination findings).

Second, the RFC assessment is supported by Plaintiff's reports to his nurse practitioner and other treatment providers, which show some anxiety, stress, and depression, but which frequently indicate that he was doing "okay" or "pretty good," and which contain little to no evidence of the panic attacks, crying episodes, lack of focus and concentration, difficulty interacting with others, nightmares, and flashbacks mentioned in Plaintiff's testimony and in Mr. Westhoff's opinion. (Tr. 648, 655, 662, 669, 676, 683, 690, 697, 704, 711, 718).

Third, as the ALJ reasonably noted, the RFC is supported by evidence that Plaintiff's symptoms were improved with medication. (Tr. 21, 23-34). As discussed above, Plaintiff usually reported to his treating nurse practitioner that his medication regimen was working well, and his nurse practitioner typically continued his medications rather than attempting to make changes. To the extent that Plaintiff's condition was controlled by medication, it cannot be considered disabling. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (quoting *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995)).

Finally, the ALJ reasonably found that the evidence of Plaintiff's daily activities and personal interactions suggested a level of mental functioning consistent with the RFC. This evidence included evidence that Plaintiff sometimes worked at a restaurant with his daughter (Tr. 23, 420, 433, 551, 555); worked for the city to pay off a fine (Tr. 23, 595, 603, 607), attended church regularly (Tr. 20, 46, 50); and visited with his wife's family for several hours twice a week (Tr. 20, 45, 56). These activities suggest that Plaintiff was capable of interacting with others to a greater degree than he asserted. *See, e.g., Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that [the plaintiff's] daily activities, including part-time work . . . were inconsistent with her claim of disabling pain.").

17

To the extent that Plaintiff contends that the ALJ should have incorporated more of the limitations in Mr. Westhoff's opinion, the Court has already rejected that contention.

Plaintiff's other arguments are also unpersuasive. Plaintiff argues that the ALJ improperly cited to evidence obtained a full year before Plaintiff's alleged onset date—specifically, evidence that Plaintiff had purchased a guitar in August 2016, along with the statement that "playing an instrument requires a measure of concentration and level of discipline inconsistent with any more than moderate limitation," and evidence that Plaintiff was working in his daughter's restaurant in August 2016 (Tr. 20-21). The Court agrees with Plaintiff that this evidence was of little or no value. However, when viewed in the context of the decision as a whole, along with all of the other evidence cited by the ALJ, these statements do not significantly undermine the ALJ's decision and do not provide a basis for remand. It does not appear that the ALJ placed heavy reliance on the guitar purchase, and there is also evidence that Plaintiff worked at his daughter's restaurant during the relevant period. (Tr. 420, 433, 551, 555).

Plaintiff also points to various pieces of evidence in the record suggesting that Plaintiff had more difficulty interacting with others than the ALJ found, such as notes indicating that he said daughter "wasn't too thrilled about" him living with her (Tr. 535), that she was considering moving after an argument with a neighbor and said Plaintiff could not move with her (Tr. 575), and that he sometimes isolated himself in his bedroom to avoid having to see his daughter (Tr. 635). Again, the Court finds no reversible error. The fact that a parent and his adult child had some conflicts while living together does not suggest that the parent is unable to interact with others in the workplace, particularly under the limited parameters set forth in the RFC assessment. Moreover, many notes suggest that their relationship was going well (Tr. 539, 543, 559, 547, 567, 571, 583, 603, 611, 647), and a review of the record suggests that many of the issues between Plaintiff and

his daughter were related to significant issues in the daughter's life, rather than Plaintiff's own difficulties (Tr. 446, 603, 611, 615, 623, 627, 631). Regardless, it is the role of the ALJ, not the Court, to weigh the various conflicting pieces of evidence regarding Plaintiff's interactions with his daughter, along with the rest of the evidence in the record, in reaching a conclusion regarding Plaintiff's abilities.

Plaintiff also takes issue with the ALJ's failure to discuss particular statements in Plaintiff's Function Report and in the Third-Party Function Report of Plaintiff's friend. But as discussed above, "an ALJ is not required to discuss every piece of evidence submitted" and "an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman*, 596 F.3d 966 (8th Cir. 2010).

In sum, although this case involved conflicting medical and non-medical evidence, some of which would have supported an RFC more restrictive than the one found by the ALJ, the Court finds that the RFC assessment was supported by substantial evidence. It is the ALJ's duty to resolve conflicts in the evidence, including medical evidence, and this Court may not substitute its opinion for the ALJ's. The ALJ's weighing of the medical opinion and other evidence here fell within the available zone of choice, and the Court cannot disturb that decision merely because it might have reached a different conclusion.

### VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**. A separate judgment will accompany this Memorandum Opinion.

/s/ Shirley Padmore Mensah
_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of March, 2022..